UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS W. VAN LOKEREN,

    Plaintiff,

               Case No. 13-14291

v.

               Hon. Patrick J. Duggan

CITY OF GROSSE POINTE PARK, MICHIGAN,
CITY OF GROSSE POINTE PARK POLICE
OFFICER THOMAS CARD, JOHN DOE(S),
UNKNOWN POLICE OFFICERS OF THE CITY
OF GROSSE POINTE PARK, DALE KRAJNIAK,
CITY MANAGER OF GROSSE POINTE PARK,
GROSSE POINTE PARK CITY COUNCIL
MEMBER AND MAYOR PRO TEM GREGORY
THEOKAS, FORMER GROSSE POINT PARKE
CITY COUNCIL MEMBER ANDREW RICHNER,
and TIMOTHY KOLTUN, COUNSEL FOR
DEFENDANTS RICHNER AND THEOKAS,

    Defendants.
_____/

## <u>OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING PLAINTIFF'S REQUEST TO AMEND</u>

*Pro se* Plaintiff Thomas W. Van Lokeren initiated this action against

Defendants the City of Grosse Pointe Park, Thomas Card, John Doe(s) (unknown

Grosse Pointe Park police officers), Dale Krajniak, Gregory Theokas, Andrew

Richner, and Timothy Koltun alleging violations of his Fourth and Fourteenth

Amendment rights pursuant to 42 U.S.C. § 1983, as well as violations of Michigan

statutory and common law, in connection with Defendants' conduct in removing

Plaintiff and his personal property from real property situated in Grosse Pointe

Park, Michigan.  Two motions are presently before the Court: (1) Defendants

Grosse Pointe Park, Card, Doe, Krajniak, and Theokas's (collectively, the "Grosse

Pointe Park Defendants") Motion to Dismiss, filed pursuant to Federal Rule of

Civil Procedure 12(b)(6), and (2) Defendants Richner and Koltun's Motion to

Dismiss, filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Having determined that oral argument would not significantly aid the decisional

process, the Court dispensed with oral argument pursuant to Eastern District of

Michigan Local Rule 7.1(f)(2).  For the reasons stated herein, the Court grants both

motions to dismiss.

## I.     BACKGROUND

**A.     Facts**

Prior to the events giving rise to this case, all of which transpired on October

8, 2010, Done Been B Triad, LLC ("Done LLC"), a Michigan limited liability

company, executed a lease in a commercial building located at 15324[1] East

---

[1] The Complaint appears to contain a typographical error as the Rental
Property address provided in the Complaint is 15322 East Jefferson Avenue.  A
copy of the lease has not been produced but the Court believes that the Rental
Property is located at 15324 East Jefferson Avenue based on two documents
submitted by the Grosse Pointe Park Defendants.  First, a Notice of Judgment of
Foreclosure refers to property located at 15324 Jefferson.  (Grosse Pointe Park
Defs.' Mot. Ex. B.)  Second, a document from the Michigan Department of
Licensing and Regulatory Affairs shows that Done Been B Triad, LLC's registered

Jefferson Avenue in Grosse Pointe Park, Michigan (hereinafter, the "Rental Property"). (Compl. ¶¶ 11-12.) Plaintiff is a member of the aforementioned LLC. (*Id.* at ¶ 12.)

The present conflict originated when at some point after Done LLC executed the lease, the building's ownership ceased paying property taxes. In accordance with the tax-foreclosure procedures set forth in Michigan Compiled Laws § 211.57 *et seq.*, the Wayne County Treasurer obtained title to the building housing the Rental Property. This is evidenced by a Notice of Judgment of Foreclosure the Grosse Pointe Park Defendants produced to this Court.[2] (Grosse Pointe Park Defs.' Mot. Ex. B.) This Notice indicates that property located at 15324 Jefferson was forfeited to the Wayne County Treasurer on March 1, 2009, and that on April 5, 2010, the Circuit Court for the Third Judicial Circuit, entered a Judgment of Foreclosure against the real property described therein. The document explicitly provides that absolute title to the property would pass to the Wayne County Treasurer if the owner did not redeem within twenty-one days after entry of Judgment. In other words, if not redeemed, the Judgment of Foreclosure would

office as well as its mailing address are located at 15324 East Jefferson Avenue. (*Id.* Ex. D.)

[2] Plaintiff cryptically refers to "the new owners of the building" but does not explain the events relevant to the transfer of ownership. (Compl. ¶ 15.) The Court believes that the publically-available documentation regarding the property transfer is properly considered on a Rule 12 motion.

3

become final and unappealable on April 26, 2010, and any recorded or unrecorded

interests and all liens would be extinguished subject to certain exceptions not

relevant here.  The building's prior ownership failed to redeem and title passed to

the Wayne County Treasurer.  On October 7, 2010, Grosse Pointe Park Partners,

LLC purchased the building and received a quitclaim deed.  (*Id.* Ex. C.)

Plaintiff alleges that on October 8, 2010, he hired two environmental

consultants to test air samples at the Rental Property to determine whether a

partially-remediated spill of toxic dry cleaning solvent years earlier posed any

health risks.  (Compl. ¶ 12.)  Upon the consultants' arrival, Plaintiff went "out and

about taking care of his business agenda."  (*Id.* at ¶ 13.)  While out, Plaintiff

received a call from one of the consultants who indicated that there were two

individuals at the Rental Property threatening the consultants with arrest.  (*Id.*)

Upon returning to the Rental Property, Plaintiff spoke with the two

individuals – Defendants Theokas and Richner – as well as two police officers –

Defendants Card and Doe – who had been dispatched to the scene.  (*Id.* at ¶ 14.)

Plaintiff tried to explain that he had a valid lease for portions of the premises and

attempted to show them the lease.  (*Id.*)  None of the four Defendants present

acknowledged the documentation and the consultants, who had not taken enough

samples to produce an accurate air quality report, "hustled out of there[.]"  (*Id.*)  At

that time, the police officers informed Plaintiff "that he would be arrested if he did

4

not immediately vacate the [Rental Property] and that he was prohibited from re-entering any part of the overall building." (*Id.* at ¶ 15.)

As the events above were unfolding, Plaintiff learned that Defendant Richner was one of the new building owners. (*Id.*) At some point, Defendant Koltun, Defendant Richner's attorney, arrived at the scene. (*Id.* at ¶ 16.) After putting Defendant Koltun on the phone with his own attorney, Plaintiff's phone battery died. (*Id.*) Plaintiff then "entered the side door of the building which went to the second floor and entered the architect Robert Wakely's suite and got his permission to use an outlet to recharge [his] phone." (*Id.*) Defendants Card and Doe followed Plaintiff into the building and "were in [his] face." (*Id.* at ¶ 17.) One of the officers was apparently on the phone with Grosse Pointe Park City Manager, Defendant Dale Krajniak, receiving instruction on how to proceed. (*Id.*) Defendant Card then threatened to arrest Plaintiff if he did not vacate the premises even though the officers "had no warrant to justify their order and there was no court action sanctioning an eviction[.]" (*Id.* at ¶ 18.)

Despite what Plaintiff believes was an assertion of unlawful authority by the officers, Plaintiff "yielded to the officers' pressure and left the building[.]" (*Id.* at ¶ 19.) While the timing is not abundantly clear from the Complaint, Plaintiff alleges that upon leaving, Defendants Richner and Theokas, as well as "one of

5

their employees[,] picked up [Plaintiff's] personal property and papers from the suite and placed them on the sidewalk outside the building."[3]  (*Id.*)

## B.    Legal Proceedings

Although Plaintiff's Complaint does not list individual counts, the Court interprets the Complaint to allege that Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights.  (Compl. ¶¶ 10, 20.)   The Fourth Amendment claim involves the alleged seizure of Plaintiff's personal property and the Fourteenth Amendment claim, which sounds in due process, rests on Defendants' conduct in wrongfully removing Plaintiff from the Rental Property, purportedly in violation of Michigan's antilockout statute codified at Michigan Compiled Laws § 600.2918.[4]   The Complaint also appears to allege that Defendants engaged in the tort of slander of title.  (Compl. ¶ 21.)  As relief for these various legal transgressions, Plaintiff seeks monetary damages in the amount of $400,000, special and/or exemplary damages, interest, costs and attorney's fees,[5] and a permanent injunction.  (*Id.* at 9.)

---

[3] The Court is unable to discern whether the personal property was removed from Mr. Wakely's suite or from the portions of the premises rented by Done LLC.

[4] In his Complaint, Plaintiff indicated that he was using the statutory vehicles of 42 U.S.C. §§ 1983, 1985, and 1986 to vindicate his constitutional rights. However, Plaintiff subsequently conceded that the claims asserted pursuant to § 1985 and § 1986 "were erroneous and should" be dismissed.  (Pls.' Resp. 6.)

[5] The request for attorney's fees is curious given Plaintiff's *pro se* status.

The Grosse Pointe Park Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on November 27, 2013.  (ECF No. 11.) Defendants Koltun and Richner filed their Motion to Dismiss, brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on December 24, 2013. (ECF No. 15.)  Pursuant to a joint stipulation extending Plaintiff's time to do so, Plaintiff filed his response on February 3, 2014.  (ECF No. 16.)  In addition to responding to the arguments raised by Defendants, Plaintiff requested an opportunity to file an amended complaint should the Court be inclined to grant the present motions to dismiss.  Both sets of Defendants filed a timely reply on February 18, 2014.  (ECF Nos. 17, 18.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits courts to dismiss a complaint on the basis that the court lacks subject matter jurisdiction.  Defendants Koltun are Richner are making a facial attack, which "is a challenge to the sufficiency of the pleading itself."   *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  "On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.*  A plaintiff bears the burden of demonstrating that a court has jurisdiction over the subject matter. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F3.d 1125, 1134 (6th Cir. 1986) (citation omitted).

7

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) allows a court to make an assessment as to whether a plaintiff's pleadings have stated a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). As articulated by the Supreme Court of the United States, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974 (2007)). This facial plausibility standard requires claimants to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1965. Even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950 (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). In this regard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

8

the reasonable inference that the defendant" is responsible for the conduct alleged in the complaint. *Id.* (citation omitted).

While courts are required to accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965, the presumption of truth does not apply to a claimant's legal conclusions, *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim *showing* that the pleader is entitled to relief[.]") (emphasis added). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted).

In conducting this analysis, courts may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Compared to formal pleadings drafted by lawyers, a generally less stringent standard is applied when construing the allegations pleaded in a *pro se* complaint. *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (reaffirming rule of more liberal construction with *pro se* complaints less than two weeks after issuing *Twombly*). The leniency with which courts construe *pro se* plaintiffs' complaints, however, does not abrogate basic pleading requirements and *pro se* plaintiffs must provide more than bare assertions of legal conclusions to survive a motion to dismiss. *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

### III.   ANALYSIS

Both sets of Defendants seek dismissal of Plaintiff's Complaint on the grounds (1) that Plaintiff lacks standing and (2) that Plaintiff's Complaint is barred by the relevant statute of limitations. In addition, Defendants Koltun and Richner

10

argue that Plaintiff has failed to allege sufficient facts in support of a finding that either is a state actor subject to liability under § 1983.  Neither set of Defendants directly addresses Plaintiff's allegations involving state law.

## A.    Standing

Federal courts are courts of limited jurisdiction and may only exercise those powers authorized by the United States Constitution and federal statutes enacted by Congress.  Accordingly, the first and most fundamental question presented in every civil action brought in federal court is whether subject matter jurisdiction exists. *Metro Hydroelectric Co. v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008); *Valinski v. Detroit Edison*, 197 F. App'x 403, 405 (indicating that federal courts have an independent obligation to strictly police the boundaries of its subject matter jurisdiction).  Article III of the Constitution defines the contours of the federal judicial power and limits the exercise of that power to cases and controversies.  U.S. Const. art. III, § 2; *see also Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317 (1997) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.") (quotation omitted). Standing, which relates to the nature and sufficiency of a litigant's concern with the subject matter of the litigation, is a fundamental element of "federal jurisdiction over a 'case' or 'controversy' . . . ."  *Morrison v. Bd. of Educ. of Boyd Cnty.*, 521

11

F.3d 602, 608 (6th Cir. 2008). "By now, it is axiomatic that a litigant demonstrates Article III standing by tracing a concrete and particularized injury to the defendant['s conduct]—whether actual or imminent—and establishing that a favorable judgment would provide redress." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992)).

Defendants argue that Plaintiff lacks standing to assert a due process claim pursuant to the Fourteenth Amendment because Plaintiff lacks a cognizable property interest in the Rental Property. Specifically, Defendants argue that because Done LLC, not Plaintiff, was the lessee of the Rental Property, only the former even arguably had a recognized property interest.[6] Interestingly, neither set of Defendants address standing for purposes of the Fourth Amendment claim.

-------------------

[6] Although Defendants argue that the tax foreclosure extinguished any property interest Done LLC may have had, Defendants fail to address whether the LLC became a tenant at sufferance by virtue of passive acquiescence. *See, e.g.*, *United States v. Hunyady*, 409 F.3d 297, 301 (6th Cir. 2005) ("[A]t common law, the defining element of a tenancy by sufferance is the passive acquiescence by the property owner. In a tenancy by sufferance, in other words, the landlord 'suffers' the tenant's presence. Michigan caselaw on this point, though limited, is clear."). Such passive acquiescence may be inferred when the owner has delayed in objecting to a tenant's presence. *See, e.g.*, *Sch. Dist. No. 11 v. Batsche*, 106 Mich. 330, 334, 64 N.W. 196, 197 (1895) ("We think the rule is that a person in possession of land lawfully, who holds over without right, becomes a tenant at sufferance, if the owner suffers him to remain in possession a sufficient length of time to imply an intentional acquiescence in the occupancy[.]"). Although title to the building housing the Rental Property vested in the new building owner – an LLC of which Defendants Richner and Theokas are members – the day before the incident described in the Complaint, over five months passed between the time that

*1.*      *Fourteenth Amendment Due Process Claim*

The Due Process Clause of the Fourteenth Amendment provides, "No State shall deprive . . . any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. In this case, it appears that Plaintiff is arguing that Defendants deprived him of his procedural due process rights. (*See, e.g.*, Compl. ¶ 20 (referring to the illegality of "'self-help evictions' (without a court order to evict)").) "Procedural due process claims are examined under a two-part analysis. First, [] court[s] must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right do [courts] continue to consider whether the deprivation of that interest contravened notions of due process." *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002) (citing, *inter alia*, *Bd. of Regents v. Roth*, 408 U.S. 564, 570-71, 92 S. Ct. 2701, 2705-06 (1972); *KY Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908 (1989); and *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 901 (1976)). Although the Fourteenth Amendment's Due Process Clause provides procedural safeguards where a protected property interest exists, "[p]roperty interests are not created by the Constitution." *Id.* (citing *Cleveland v. Bd. of Educ. of Loudermill*, 470 U.S. 532, 538, 105 S. Ct. 1487, 1491 (1985)). Rather, property interests are "created and their dimensions are defined

the Wayne County Treasurer had come into ownership and the time that the new owners received a quitclaim deed vesting them with title.

13

by existing rules or understandings that stem from an independent source such as state law . . . ." *Id.* (quoting *Roth*, 408 U.S. at 577, 92 S. Ct. at 2709).  Thus, to succeed on his Fourteenth Amendment claim, Plaintiff must have a property interest created by Michigan law separate and apart from Done LLC.  This is where Plaintiff's allegations regarding Michigan Compiled Laws § 600.2918, commonly referred to as the "antilockout statute," become relevant.

> Michigan's antilockout statute provides, in pertinent part:
>
> (2)  Any *tenant* in possession of premises whose possessory interest has been unlawfully interfered with by the owner is entitled to recover the amount of his or her actual damages or $ 200.00, whichever is greater, for each occurrence and, if possession has been lost, to recover possession . . . . [U]nlawful interference with a possessory interest includes . . . :
>
> > (b)  Removal, retention, or destruction of personal property of the possessor.

Mich. Comp. Laws § 600.2918(2) (emphasis added).  Plaintiff seems to argue that he was a tenant of the Rental Property and that the removal of his personal property by select Defendants therefore contravened the statutory language quoted above.  This argument fails as Plaintiff was not a tenant.

It is axiomatic that a lease gives the tenant the possession of the property leased and the exclusive use or occupation of it for all purposes not prohibited by the terms of the lease.  *Macke Laundry Serv. Co. v. Overgaard*, 173 Mich. App. 250, 253, 433 N.W.2d 813, 815(Mich. Ct. App. 1988) (citation omitted).  Although

14

the Michigan Legislature did not define the word "tenant" in the antilockout

statute, the Michigan Court of Appeals, exercising traditional canons of statutory

interpretation, determined that the word "tenant," refers to "the individual or

individuals who pay consideration to a landlord for the right to occupy rental

property, rather than the members of the larger family unit dwelling in the rental

property." *Nelson v. Grays*, 209 Mich. App. 661, 664-66, 531 N.W.2d 826, 828-29

(Mich. Ct. App. 1995) (per curiam).  Thus, in *Nelson*, the appeals court affirmed a

determination by the lower courts that the tenant (the individual paying rent) was

entitled to damages pursuant to the antilockout statute but that the tenant's

children, who were lawful occupants of the leased property but lacked "a separate

contractual right to occupy the premises[,]" were not.  *Id.* at 663, 666, 531 N.W.2d

at 528-29.  In other words, the fact that the children were lawful occupants did not

render them tenants and they were therefore outside of the ambit of the statutory

provision which specifically applies to "tenants in possession[.]"  Mich. Comp.

Laws § 600.2918(2).

Although *Nelson* addressed the issue of lawful occupants within the familial

relationship context, the rationale is equally applicable in this case.  Here, Done

LLC leased the Property.  Done LLC, therefore, had a contractual relationship with

the previous landlord and as possessor of the Rental Property, had an obligation to

remit consideration in exchange for the use of the premises.  Plaintiff's position as

15

a member of that LLC implies that he had the tenant's (the LLC's) permission to use the premises but this permission renders Plaintiff's status analogous to the tenant's children in *Nelson*. Being a lawful occupant does not confer onto Plaintiff a property interest created or recognized by Michigan law. Because Plaintiff lacks a cognizable property right in the building at issue, he has not demonstrated an injury-in-fact and he therefore lacks standing.[7] *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472, 102 S. Ct. 752, 758 (1982) (requiring "the party who invokes the court's authority to 'show that he *personally* has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant[]'" (quotation omitted) (emphasis added)).

Further, to the extent that Plaintiff attempts to seek relief for any conduct executed in derogation of Done LLC's protected property interest, this he may not do. "Closely related to the constitutional requirement that a plaintiff must suffer a

---

[7] Because Plaintiff's Complaint makes reference to the fact that Defendants lacked a court order of eviction, (Complaint ¶ 20), the Court finds it necessary to comment on the scope of process Plaintiff was due. The Court's finding that Plaintiff has no property interest in the Rental Property under state law means that the Due Process Clause demands no pre-eviction hearing. That Michigan law allows property owners to use summary proceedings to evict trespassers does not change this result. Mich. Comp. Laws § 600.5714(1)(e). This statutory provision does not create a substantive interest in Plaintiff's favor; rather, the provision is a state procedural safeguard. "[T]he Due Process Clause does not protect against the deprivation of state procedural rights." *West Farms Assocs. V. State Traffic Comm'n*, 951 F.2d 469, 472 (2d Cir. 1991).

'personal' injury to establish standing is the prudential requirement that a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 15 (D.D.C. 2010) (citations omitted).  Plaintiff has not provided a single reason explaining why this Court should permit him to invoke the doctrine of third-party standing.

Defendants suggest that Plaintiff lacks standing for another reason, although the Court notes that this final reason is analytically distinct from the question of standing.  As Defendants point out, the Supreme Court of the United States recognizes that federal law, specifically 28 U.S.C. § 1654,[8] "does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney."  *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202,

---

[8] Title 28 U.S.C. § 1654 provides:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

Courts interpreting this statute, which confers the right of a party to appear *pro se* in civil actions, "have consistently construed this section to grant a right of *pro se* representation only to individuals."  *Sermor, Inc. v. United States*, 13 Cl. Ct. 1, 5 (1987) (citations omitted).  "Unlike individuals, corporations are artificial entities created by the law, which cannot appear personally in an action, but must make appearances through agents."  *Id.*  As such, "[t]he rule is well settled that corporate agents who appear on the behalf of corporations in federal courts must be attorneys and not directors, officers or shareholders of the corporation."  *Id.*

113 S. Ct. 716, 721 (1993).  The United States Court of Appeals for the Second

Circuit has subsequently explained that the rationale undergirding this rule "applies

equally to all artificial entities[,]" including limited liability companies.  *Lattanzio*

*v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007) (quotation omitted).  The Second

Circuit reasoned: "Because both a partnership and a corporation must appear

through licensed counsel, and because a limited liability company is a hybrid of the

partnership and corporate forms," "a limited liability company also may appear in

federal court only through a licensed attorney."  *Id.* at 140.  This rule applies alike

to "limited liability companies and sole member or solely-owned limited liability

companies[]" because unlike a sole proprietorship, " a sole member limited

liability company is a distinct legal entity that is separate from its owner."  *Id.*  The

Court is persuaded by this reasoning and finds that Plaintiff lacks statutory

authority to initiate this action in effort to vindicate the rights of Done LLC.  Thus,

*even if* Done LLC's property rights were unlawfully deprived by some or all of the

defendants, Plaintiff is not authorized to file a *pro se* action on its behalf.

In sum, Plaintiff lacks standing to assert a Fourteenth Amendment claim and

this Court is therefore without jurisdiction.

## 2.    *Fourth Amendment*

18

Plaintiff seeks to state a § 1983 claim for violation of his Fourth Amendment[9] rights due to the removal of his personal property and papers from building by Defendants Richner and Theokas and by one of "their" unidentified employees.  (Compl. ¶ 19.)  Plaintiff does not appear to seek to raise the Amendment's privacy shield; rather, Plaintiff, pointing to *Soldal v. Cook County*, 506 U.S. 56, 113 S. Ct. 538 (1992), appears to assert that this alleged conduct constituted an unreasonable seizure.  As mentioned before, Defendants do not directly address standing in connection with Plaintiff's Fourth Amendment claim.  Although Defendants' standing argument disposed of Plaintiff's due process claim, the same is not true here.  *See, e.g.*, *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) ("The Fourth Amendment protects against a seizure of property even if it occurs in a context in which privacy or liberty interests are not implicated.  Thus, our finding that [the plaintiff] had no reasonable expectation of privacy in the house . . . does not affect our conclusion that [the plaintiff] has standing to challenge the seizure of her property." (citation omitted)).  Each set of Defendants does, however, provide other arguments that may dispose of the Fourth Amendment claim.  These are discussed immediately below.

---

[9] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.

19

**B.      State Action**

To the extent Plaintiff is seeking to state a cause of action against Defendants Richner and Theokas pursuant to 42 U.S.C. § 1983, his Complaint must contain sufficient factual allegations showing that these Defendants are state actors.  This Plaintiff has not done.

In order to prevail on a claim brought pursuant to § 1983,[10] a plaintiff must establish: "'(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'"  *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).[11]  Federal courts consider actions "under color of law" as the equivalent of "state action" under the Fourteenth Amendment.  *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S. Ct. 2764, 2769 (1982).  "Some rights established either by the Constitution or by

---

[10] Section 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

[11] Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere."  *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir. 2000).

federal law are protected from both governmental and private deprivation." *Flagg Bros. v. Brooks*, 436 U.S. 149, 156, 98 S. Ct. 1729, 1733 (1978).  The Fourth Amendment is not one of those rights; rather, the Fourth Amendment's prohibitions apply only to government action.  Even if the Fourth Amendment applied to purely private conduct, a private actor may be subjected to liability under § 1983 only if he caused the deprivation of a federal right under color of state law.  *Id.*

In this case, Plaintiff alleges that Defendant Richner, an attorney, former Grosse Pointe Park City Council Member, and "one of the new owners of the building[,]" violated his Fourth Amendment rights.  (Compl. ¶¶ 14-15.)  These allegations do not support a finding that Defendant Richner is capable of violating Plaintiff's Fourth Amendment rights as a former elected official is not forever deemed a government actor.  Furthermore, even if Defendant Richner could be held to account for the alleged deprivation of Plaintiff's Fourth Amendment rights, the operative complaint lacks any allegations that this private party's conduct was done under color of law, as required to impose liability under  § 1983.[12]

---

[12] The primary issue in deciding whether a private party's actions constitute "state action" is whether the party's actions may be "fairly attributable to the State."  *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S. Ct. 2744, 2753 (1982).  The Supreme Court has articulated three tests to determine whether challenged conduct may be deemed fairly attributable to the state such that a private actor may be liable under § 1983.  "These tests are: (1) the public function test, *West*, 487 U.S. at 49-50, 108 S. Ct. at 2255-56 (1988); *Flagg Bros. v. Brooks*,

Plaintiff also alleges that Defendant Theokas, a City Council Member, Mayor Pro Tem, and another member of the LLC that acquired the building housing the Rental Property, violated his Fourth Amendment rights. (Compl. at ¶ 14; Resp. 1.) The Grosse Pointe Park Defendants briefly address Plaintiff's Fourth Amendment claim in a footnote stating that "it is clear from [P]laintiff's [C]omplaint that [D]efendant Theokas was not acting under color of state law. Consequently, he is not a proper party to a claim under 42 U.S.C. § 1983." (Grosse Pointe Park Defs.' Br. 3 n.3 (citing *Foreman v. Gen. Motors Corp.*, 473 F. Supp. 166, 178 (E.D. Mich. 1979).) Although the footnote notes that this deficiency is "not raised as an issue with this motion," (*id.*), presumably because the Grosse Pointe Park Defendants believe the other arguments in support of dismal are sufficient, the Court is left to guess at what makes it this conclusory assertion so clear. Having reviewed the briefs filed in conjunction with this matter, the Court believes that the statement regarding Defendant Theokas has its roots in the fact that he was a member of the LLC that acquired title to the building.

The Court believes that the factual circumstances regarding the building ownership renders Plaintiff's allegations regarding the Fourth Amendment less

---

436 U.S. 149, 157, 98 S. Ct. 1729, 1734 (1978); (2) the state compulsion test, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 170, 90 S. Ct. 1598, 1615 (1970); and (3) the symbiotic relationship or nexus test, *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721-26, 81 S. Ct. 856, 859-62 (1961)." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). Plaintiff's allegations do not satisfy any of the three tests.

than plausible. "[T]he well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression]," thus, "the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted).

While true that Defendant Theokas held public office, the Complaint's factual allegations do not plausibly suggest that he participated in the incident in his capacity as a public official as opposed to a private person.[13] In other words, Plaintiff has failed to "nudge[] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.

**C.**    **Statute of Limitations**

Lastly, both sets of Defendants argue that even if Plaintiff establishes standing, his § 1983 claims are time-barred. While § 1983 does provide for a cause of action for violation of one's federally-protected rights, the statute does not provide a limitations period. *Wilson v. Garcia*, 471 U.S. 261, 266, 105 S. Ct. 1938, 1942 (1985) ("The Reconstruction Civil Rights Acts do not contain a specific statute of limitations governing § 1983 actions -- 'a void which is commonplace in federal statutory law.'" (quotation omitted)). Supreme Court precedent holds that

---

[13] Also referenced in the portion of the Complaint dealing with the Fourth Amendment claim is an unidentified employee, referred to as "one of [Richner and Theokas's] employees." (Compl. ¶ 19.) It is unclear who this individual is and if this individual is a defendant in the present action.

the appropriate statute of limitations to be applied in all § 1983 actions is the state statute of limitations governing actions for personal injury. *Id.* at 276, 105 S. Ct. at 1947. Sixth Circuit caselaw provides that when the cause of action arises in Michigan, as it did in this case, Michigan's three-year statute of limitations for personal injury claims, codified at Michigan Compiled Laws § 600.5805(10), provides the limitations period. *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986) (per curiam).

The events giving rise to this action occurred on October 8, 2010. (Compl. ¶ 12.) Applying the pertinent statutory period, Plaintiff had until October 8, 2013 to file his Complaint. The Court's electronic case management system shows the Complaint as being filed on October 9, 2013, one day after the limitations period expired. This forms the basis for Defendants' contention that Plaintiff's § 1983 claims are time-barred.

In responding to Defendants' Motion to Dismiss, Plaintiff presented this Court with evidence showing that he mailed his Complaint to the Court on October 7, 2013, via overnight mail. (Resp. 11.) Plaintiff also submitted a printout of the Federal Express tracking report indicating that the Complaint had an "[a]ctual delivery" time of 9:18 am on Tuesday, October 8, 2013. (*Id.* at 12.) Despite this credible evidence, both sets of Defendants continue to argue in their respective reply briefs that the claim is time-barred. (Grosse Pointe Park Defs.' Reply 2

24

("Here, although plaintiff may have sent his complaint by Federal Express so that it arrived at this Court on October 8, 2013, it was not actually filed until October 9, 2013. Plaintiff, who had three years to file his complaint, should have filed [it] electronically or even sent it a day earlier to ensure that it was timely filed."); Koltun & Richer's Reply 5 ("Unless the Court's records are revised to reflect Plaintiff's argument, the filing date of record is one day too late. Accordingly, Plaintiff's claims are time-barred and should be dismissed.").) While faulting Plaintiff, who is proceeding *pro se*, for not citing to any caselaw to support his argument that he should not be held accountable for the late filing, both sets of Defendants conveniently ignore the doctrine of equitable tolling and the caselaw that negates the suggestion that Plaintiff's claims are time-barred.

"Equitable tolling allows courts to entertain otherwise time-barred proceedings when 'a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Ross v. McKee*, 465 F. App'x 469, 473 (6th Cir. 2012) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560-61 (6th Cir. 2000)). While federal courts "sparingly" use equitable tolling, "[f]ederal courts sitting in equity do not condone" holding a litigant responsible for something beyond his control. *Id.* at 473, 475 (citations omitted).

25

In the Sixth Circuit, documents are filed when the mail carrier "'[makes] delivery at the place directed by the addressee.'"  *Id.* at 474 (quoting *Central Paper Co. v. Comm'r of Internal Revenue*, 199 F.2d 902, 904 (6th Cir. 1952)).  In *Central Paper*, a tax case, the Sixth Circuit held that a taxpayer's documents, which were delivered to a ledge beside a lock-box the tax court designated for filings, were timely as the placement by the lock-box "constituted delivery to The Tax Court." 199 F.2d at 904.  The panel provided the following explanation for deeming the papers timely filed:

> [T]he processing and handling of the petition by Tax Court employees [after the filing arrived] was of no concern of the taxpayer.  Failure or unreasonable delay on the part of the Tax Court employees to transfer it from the lock box to the Clerk's Office, or to stamp it as filed after receipt in the Clerk's Office, is not chargeable to the taxpayer.

*Id.* at 905.  In reiterating this rule, the *Ross* Court noted that "[o]ur sister circuits, and district courts nationwide, have adopted similar logic, holding that delay between a document's arriving at a post office box or drop-box, designated for court documents, and the clerk's docketing the document is not attributable to the filing party."  465 F. App'x at 474-75 (citing cases).

In this case, the documentary evidence shows that Plaintiff's Complaint arrived at the courthouse in a timely manner.  The Complaint was delivered just after 9:00 am and was signed for by a court employee. (Resp. 12.)  That the Clerk's Office did not officially docket the Complaint until the following day does

26

not mean that Plaintiff failed to timely file his Complaint.  Indeed, had the Clerk's Office docketed the Complaint on the day of receipt, Defendants would be deprived of any statute of limitations defense.  The Court does not believe that the delayed docketing, clearly outside of Plaintiff's control, should be imputed to him. That Plaintiff could have sent the complaint a day earlier is entirely irrelevant.

**D.     Slander of Title**

Paragraph twenty-one of Plaintiff's Complaint, which serves as the Court's basis for inferring that Plaintiff is endeavoring to state a claim for slander of title, provides: "The defendants has also, by making false statements about his property rights, attacked Plaintiff's integrity and caused special damage to Mr. VanLokeren's professional reputation and standing."  (Compl. ¶ 21.)  Defendants do not address this cause of action but, despite this omission, the Court deems dismissal with prejudice proper pursuant to Rule 12(b)(6).

 "In Michigan, slander of title claims have both a common-law and statutory basis."  *B & B Inv. Group v. Gitler*, 229 Mich. App. 1, 8, 581 N.W.2d 17, 20 (Mich. Ct. App. 1998); Mich. Comp. Laws § 565.108.  A plaintiff seeking to establish slander of title at common law is required to show "falsity, malice, and special damages, *i.e.*, that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages."  *B & B Inv.*, 229 Mich. App. at 8, 581 N.W.2d at 20 (citations omitted).  "The same three

27

elements are required in slander of title actions brought" pursuant to Michigan Compiled Laws § 565.108.  *Id.* (citations omitted).

Plaintiff has not stated a viable claim for slander of title for two reasons. First, Plaintiff's allegations are wholly deficient under federal pleading standards. Plaintiff has merely parroted the elements of the cause of action without providing the further factual enhancement required by *Twombly* and its progeny.  Second, and of greater consequence than the first, Michigan law provides a one year statute of limitations for actions charging libel or slander.  Mich. Comp. Laws § 600.5805(9).  This one year limitations period applies to slander of title.  *Bonner v. Chi. Title Ins. Co.*, 194 Mich. App. 462, 471, 487 N.W.2d 807, 812 (Mich. Ct. App. 1992) (holding that "the one-year period of limitation for an action charging libel or slander applies to an action for slander of title").   Accordingly, Plaintiff's slander of title cause of action fails as a matter of law and is dismissed.

## IV.   CONCLUSION AND ORDER

For the reasons set forth above, the Court **GRANTS** Defendants' Motions, (ECF Nos. 11, 15), and **DISMISSES** Plaintiff's Complaint.   Because the deficiencies in Plaintiff's Complaint cannot be remedied, this dismissal is **WITH PREJUDICE**.  It necessarily follows that the Court **DENIES** Plaintiff's request to amend.

**IT IS SO ORDERED**.

Date:  March 13, 2014

<u>s/PATRICK J. DUGGAN</u>
UNITED STATES DISTRICT JUDGE

Copies to:

**Thomas W. Van Lokeren**
143 Varennes Street
San Francisco, CA 94133

**Dennis J. Levasseur, Esq.**
**Debashree Nandy, Esq.**
**Edward J. Hood, Esq.**